And so we'll proceed with the first case, Malik v. City of New York. Good morning, Your Honors. Good morning. Robert Mahoney on behalf of the plaintiff appellate, Dr. Abdul-Malik. I have reserved one minute for rebuttal, if that's acceptable, Your Honor. That's fine. Thank you, Your Honor. Your Honor, this appeal is the result of a dismissal under Rule 12b-6 of Dr. Malik's 341-paragraph complaint, which was supported by numerous and voluminous exhibits, which he had available to him at that time. We respectfully submit that the district court engaged in fact-finding and evidence-weighing on that 12b-6 motion when the court concluded that the defendants were engaged in prosecutorial and not investigatory actions and therefore applied absolute immunity. We also believe that the court improperly weighed the evidence when it determined that there was no probable cause for the arrest and prosecution of Dr. Malik. On the Monell claim, Your Honor, we respectfully submit that the court improperly and cursory concluded that the coercion of informant evidence was a single act and was not a practice and custom of the Kings County District Attorney's Office. On the issue of whether this was conduct in the investigatory or the advocacy stage, Your Honor, we believe that the complaint, again, this is a 12b-6 dismissal, the complaint clearly sets forth that the alleged wrongful conduct, that is the coercion of false testimony from the informant Albina Zabotsky, occurred during the investigatory stage. In fact, the complaint alleges... What allegations are there in the complaint that the individual defendants coerced the false testimony? Your Honor, those allegations, I believe they're at the beginning of page 54 of the appendix, allegations, paragraphs 204 through 207. But how are those more than conclusory? Now, you know, at one point before Iqbal and so on, we would say almost anything goes, but now, and recently, our court has gone back to what was an older tradition in our court, actually, of requiring something, plausibility, which means more than just it could be, but that there is some real likelihood on the basis of what you have said. Your Honor, and I certainly understand the change in the law based upon Iqbal and Twombly. We believe at this stage, and given the fact that, as alleged in the complaint, that the district attorney's office would not engage in open discovery, and Dr. Mullick and his prior counsel had engaged in their own discovery, that there was no ability for Dr. Mullick to obtain any further allegations with regard to... What are the specific allegations, if any, that the defendants coerced the false testimony? What did they do, allegedly? Allegedly, Your Honor, that Albina Zavadsky, who was a participant in the fraudulent scheme that is alleged in the indictment, was the mastermind of Ultraline. Ultraline was the entity which Dr. Mullick was reading studies for as a cardiologist. And Zavadsky was never indicted. She was never charged. She was never tried. She was never incarcerated. And, in fact, she gave testimony that turned out to be false. Well, it did turn out to be false. But what evidence is there that the district attorneys knew it was false, or coerced, or urged the false testimony? Your Honor, after the... The allegations, I mean. Yes, understood, Your Honor. As alleged in the complaint, after the indictment, evidence was brought to the district attorney's attention, which indicated that the supposed bank account, which Zavadsky had indicated to the district attorney's office, was controlled by Dr. Mullick. It was not, in fact, controlled by Dr. Mullick. It was, in fact, controlled by Ultraline and Zavadsky. This all shows why the testimony was false. But the claim you're making is that this was somehow importuned by the defendants. And you're just telling us why it's false. You're not telling us why there's a basis to think that the defendants were responsible for the falsity. Your Honor, the... Tell us out. Our allegation is, Your Honor, is that the prosecutor's office coerced Zavadsky so that she could avoid her own criminal... Based on what? That's a conclusion. What facts support that? We believe... Everything you've pointed us to is why it's false. But what is the basis to think that the defendants somehow coerced or importuned false testimony? Your Honor, I believe that the inference can be drawn from the falsity of the testimony itself. You mean any time there is a defendant and there is somebody who gives false testimony and the testimony is manifest, turns out to be manifestly false, we can infer that the district attorneys or that the prosecutors had something to do with that? Your Honor... That's a mighty big jump. It is, Your Honor, but in this case when Zavadsky herself is at the very center of the fraudulent scheme and she's attempting to save herself from prosecution, she would have every intention to... The fact that this... Zavadsky did something... There's evidence that he did something very bad and that that may well give rise to a state cause of action against him is, I think, clear. I mean, you've given enough evidence of that and everything you say is false. But again, how do you jump from that to the district attorneys? That's my problem. Your Honor, I understand and I agree that the allegations in the complaint are not as specific as I would certainly want them to be, but given the posture of this case and the fact that there was no open discovery permitted and there was no opportunity for Dr. Mollick... That's the problem, you know. That's the problem with Iqbal and Twombly, that it comes in before discovery and so it puts people like you in the position of not having discovery to make that link. And, you know, that's an argument that it should be one way or the other, but that's the law that we have now. Your Honor, I know it is a case that was decided under Monell, which I would like to get to in my remaining time if I could. But under Monell, this Court's opinion in Walker v. City of New York pointed out that very difficulty, which Your Honor is referring to, that on a 12 v. 6 motion, there is no opportunity for the plaintiff to have obtained discovery and, therefore, even with Iqbal and Twombly, the Court should still give all inferences to the plaintiff that can be drawn from the allegations in the complaint to permit the plaintiff to either re-plead the complaint or take limited discovery with regard to the central issue of the court's testimony. Your Honor, in my remaining time, if I could briefly jump to the Monell claim, specifically count 15 of the complaint, we respectfully submit that the allegations that are laid out in the complaint, including the numerous exhibits, allege a widespread and accepted practice within the Kings County District Attorney's Office to unduly coerce informants. We believe that the District Court was wrong when it concluded that all that was alleged was a single act of coercion and, therefore, that did not consist of or create a customary practice within the District Attorney's Office. We believe that the Monell claims in count 15 of the complaint adequately state the cause of action under Monell. If I could get back to the probable cause, I know you haven't asked me about probable cause, but it looks like my time is up. I will address that on rebuttal. Thank you. We'll hear from your colleague on the other side. May it please the Court, Zach Shapiro for the City and DA defendants. As it pertains to Mr. Malik's case, the DA's office was just another victim of the massive health care fraud that it was prosecuting. By his own allegations, the DA's office uncovered multiple documents that were used in this health care fraud scheme, some of which were notarized that apparently bore Malik's signature. Based on those documents and other evidence, the DA's office reasonably charged him as part of the scheme. And then when it received evidence that his signature had been forged on those documents, it dropped the charges against him. There's no allegation that the DA's office played any role in forging his signature. And to the extent he's asserting in conclusory terms that there was some sort of fabrication of evidence, as your Honor's question suggested, he's just relying on a string of conclusory verbs, synonyms for the word pressure, that don't actually identify what specific conduct the DA's defendant supposedly engaged in to coerce the false testimony. As your Honor, Judge Calabresi suggested, to the extent he has a claim, it's against Ultraline and Zabodsky. And in fact, just yesterday, the New York Appellate Division allowed him to proceed with those claims. He hasn't identified any wrongdoing by the DA defendants. Well, the main thing that one might say is, does the DA's office have a practice of taking the word of informants without doing adequate investigation? Of just taking what they say, because it makes life easier, without looking into at all whether some of these informants may in fact be simply pursuing their own aims, or as in this case, allegedly be totally fraudulent. Well, I don't think there is any allegation that the DA's office has that practice. But to address your Honor's question more directly, in this case, the documentary evidence, including notarized documents that apparently bore Malik's signature, only corroborated Zabodsky's statements. And as this court recognized in cases like Stappello and Lace, the fact that the witness herself participated in the alleged crime is actually evidence of her reliability. What happened, it's not relevant really, but what happened to the other defendants in the criminal case? There were convictions, I assume? I'm actually not sure, your Honor. Okay. So, we submit that the district court rightly dismissed the case on multiple grounds. For one, the DA defendants had absolute immunity with respect to Mr. Malik's claims. Those claims rest on quintessential prosecutorial functions, such as the decision to bring an indictment, the presentation of evidence at the grand jury hearing, the decision about what evidence to turn over to defense counsel post-indictment, the decision about what statements to make in the course of discussing the case with defense counsel. Under this court's precedent and the Supreme Court's precedent, those are central prosecutorial functions. But even putting that aside, based on those documents as well as the Zabodsky's statements and the presumption that arises from the indictment, the defendants had probable cause to charge him as part of the scheme. What the documentary evidence showed was that Mr. Malik apparently signed notarized documents authorizing Ultraline to bill Medicaid on his behalf, that Medicaid then fraudulently billed Medicaid, that Medicaid then sent checks and wire transfers in Malik's name, that Malik then endorsed those checks, or apparently endorsed those checks, and that they were deposited into an account owned by Ultraline, and then that Ultraline paid him over $260,000. That's just the documentary evidence, and it makes out a clearly sufficient basis for probable cause. At the very least, it establishes arguable probable cause for purposes of qualified immunity. And then on top of that, besides his malicious prosecution claim, Mr. Malik abandoned all of his other claims, specifically opposing their dismissal in the district court. And then finally, on the Monell claim, it fails because Mr. Malik failed to satisfy any of the three elements of the Monell claim. For the same reasons I was just suggesting, there was no plausible allegation of a constitutional violation. There was no plausible allegation of a relevant municipal policy or custom. He relies on cases from the 1990s, cases dealing with vulnerable drug addicts that are just not comparable to any claim that Zawadzki, any claim with respect to Zawadzki, who was, as his complaint suggests, was the sophisticated owner of this medical provider that perpetrated a fraud against him. It's just not comparable. And then even assuming that kind of policy of coercing witnesses, as Your Honors were suggesting, there's no specific allegation of any acts that any of the defendants engaged in to coerce her testimony here. So I'd be happy to answer any other questions Your Honors have. Thank you. Thank you. Mr. Mahoney, your rebuttal. You're on mute, Mr. Mahoney. I knew I was going to do that. On the issue of probable cause, the Appalachian Council relies upon these admittedly forged documents. There is no allegation in the complaint that the prosecution had possession of those forged documents during the investigator stage or when it decided to indict Dr. Malik. In fact, the allegations relating to the forged documents begin on paragraph 4. But Dr. Malik was involved, right? He did 10,000 readings for this company and was paid $260,000. He was, Your Honor, and that in and of itself does not create evidence of a crime. But the question is not whether it's admissible as evidence. The question is whether it supports probable cause. Your Honors, and that's why the defendants rely upon these forged documents. And as I said, there's no allegation in the complaint that they had possession of these forged documents. In paragraph 144 and following, it simply indicates that Dr. Malik obtained those on his own through discovery in the criminal proceeding. Thank you both. The court will reserve decision. Thank you. Thank you, Your Honors.